**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

INVISION ARCHITECTURE, LTD.,

    Plaintiff,

vs.

JEFFREY ANDERZHON,
MICHAEL CARLSON,
BROWN ARCHITECTURE &
DESIGN CO. d/b/a/ STUDIO 360
ARCHITECTURE,

    Defendants.

No. 11-CV-2001-LRR

**ORDER**

_____

***TABLE OF CONTENTS***

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

*II.  RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . *

*III. SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . *

*IV.  STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

*V.   RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . *

    *A.  Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *
    *B.  Agreements* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *
    *C.  InVision's Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

*VI.  ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

    *A.  Parties' Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *
    *B.  Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *
    *C.  Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

*VII. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

***I. INTRODUCTION***

The matter before the court is Defendant Brown Architecture & Design Co. d/b/a

Studio 360 Architecture's ("Studio 360") "Motion to Dismiss for Lack of Personal Jurisdiction" ("Motion") (docket no. 8).

## II. RELEVANT PROCEDURAL HISTORY

On August 4, 2009, Plaintiff InVision Architecture, Ltd. ("InVision") filed a Petition at Law ("Complaint") (docket no. 2-3 at 1-3) in the Iowa District Court for Black Hawk County, case no. LACV109994, against Defendant Jeffrey Anderzhon. On February 5, 2010, Jeffrey Anderzhon filed an Answer and Counterclaim (docket no. 2-3 at 27-29). On February 22, 2010, InVision filed an Answer to the Counterclaim (docket no. 2-3 at 62-64). On April 1, 2010, InVision filed an Amended Petition at Law ("First Amended Complaint") (docket no. 2-3 at 36-39). On April 15, 2010, Jeffrey Anderzhon filed an Answer to the First Amended Complaint (docket no. 2-3 at 40). Subsequently, InVision filed a Second Amended Petition at Law ("Second Amended Complaint") (docket no. 2-3 at 41-45),[1] adding Michael Carlson and Studio 360 as Defendants. On December 16, 2010, InVision filed a Third Amended Petition at Law ("Third Amended Complaint") (docket no. 4).

On January 7, 2011, Michael Carlson and Studio 360 removed the action to this court on the basis of diversity jurisdiction. Jeffrey Anderzhon consented to the removal. On January 20, 2011, Michael Carlson filed an Answer (docket no. 7) to the Third Amended Complaint. On that same date, Studio 360 filed the Motion. On February 14, 2011, InVision filed a Resistance (docket no. 15). On February 28, 2011, Studio 360 filed a Reply (docket no. 19).

## III. SUBJECT MATTER JURISDICTION

The court has diversity subject matter jurisdiction over InVision's claims because complete diversity exists among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all

---

[1] The court is unable to read the date stamp on the Second Amended Complaint.

civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States").

## IV. STANDARD OF REVIEW

"'To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction,' and may do so by affidavits, exhibits, or other evidence." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983-84 (8th Cir. 2004) (quoting *Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003)). Although the court must view the evidence in the light most favorable to the nonmoving party and resolve all factual conflicts in its favor, "as 'the party seeking to establish the court's in personam jurisdiction, [the non-moving party] carries the burden of proof and the burden does not shift to the person challenging jurisdiction.'" *Id*. (quoting *Epps*, 327 F.3d at 647).

## V. RELEVANT FACTUAL BACKGROUND

### A. Parties

InVision is an Iowa corporation with its principal place of business in Waterloo, Iowa. Jeffrey Anderzhon is a citizen of Virginia. Michael Carlson is a citizen of Nebraska. Studio 360 is a Nebraska Corporation with its principal place of business in Omaha, Nebraska.

### B. Agreements

Jeffrey Anderzhon and Michael Carlson worked at InVision's Omaha office, and owned shares in InVision. On October 3, 2006, Jeffrey Anderzhon and Michael Carlson reached separate agreements with InVision, whereby Jeffrey Anderzhon and Michael Carlson agreed to separate from, and surrender their shares to, InVision. Upon his separation from InVision, Michael Carlson began working for Studio 360.

### C. InVision's Claims

In the Third Amended Complaint, InVision alleges that Jeffrey Anderzhon and

3

Michael Carlson breached the agreements when they used architectural designs that InVision owned. InVision also alleges that Jeffrey Anderzhon and Michael Carlson misappropriated the architectural designs, and that Jeffrey Anderzhon, Michael Carlson and Studio 360 used and profited from InVision's trade secret.

## VI. ANALYSIS

### A. Parties' Arguments

Studio 360 argues that the Third Amended Complaint "fails to provide any factual allegations regarding Studio 360's alleged minimum contacts to support this [c]ourt's exercise of specific and/or general personal jurisdiction." Motion at ¶ 11. Studio 360 therefore asks the court to "dismiss [InVision's] allegations against it for failure to adequately plead personal jurisdiction pursuant to [Federal Rule of Civil Procedure] 12(b)(2)." *Id.* at ¶ 12.

In its Resistance, InVision argues that Studio 360 has continuous and systematic contacts with Iowa based upon the following facts: (1) Studio 360 is licenced and registered to do business in Iowa; (2) Dwayne Brown, one of Studio 360's owners and its principal architect, is a licensed architect in Iowa; (3) Studio 360 "advertised its ability to practice architecture in Iowa"; and (4) two of Studio 360's architects, Michael Carlson and Jeremy Carlson, "have taken part in professional activities in Iowa." Resistance at 7-8.

In its Reply, Studio 360 claims that it is not registered to do business in Iowa and that it has never advertised in Iowa. Studio 360 also argues that, although two of its architects participated in non-company related activities in Iowa and its principal architect is licensed in Iowa, such contacts are insufficient to confer general jurisdiction.

### B. Applicable Law

"A federal court may exercise personal jurisdiction over a nonresident defendant only if doing so is consistent with both the forum state's long-arm statute and the requirements of the Due Process Clause." *Primus Corp. v. Centreformat Ltd.*, 221 F.

App'x 492, 493 (8th Cir. 2007) (per curiam) (citing *Romak*, 384 F.3d at 984); *see also Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1143 (7th Cir. 1975). Iowa's long-arm statute extends personal jurisdiction over nonresidents to the fullest extent permissible under the Due Process Clause. *See* Iowa R. Civ. P. 1.306; *see also Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (per curiam) (same); *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005) (same); *Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 899 (Iowa App. 2002) ("Under Iowa Rule of Civil Procedure 1.306, Iowa's jurisdiction reaches to the widest due process parameters of the federal constitution."). Therefore, the court only needs to examine whether the exercise of personal jurisdiction over Studio 360 comports with due process. *Hicklin*, 959 F.2d at 739.

"The Due Process Clause requires that 'minimum contacts' exist between the nonresident defendant and the forum state before the court can exercise jurisdiction over the defendant." *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "'Sufficient contacts exist when the defendant's conduct and the connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 1090-91 (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994)).

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)); *see also Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) ("The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction."). General jurisdiction exists "if a defendant

has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances, the alleged injury need not have any connection with the forum state." *Steinbuch*, 518 F.3d at 586 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)). However, the plaintiff "must make a prima facie showing . . . that the defendant's contacts were not 'random,' 'fortuitous,' or 'attenuated.'" *Id.* (quoting *Keeton*, 465 U.S. at 774). "Specific jurisdiction on the other hand is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Id.* (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

"Both theories of personal jurisdiction require 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Dever*, 380 F.3d at 1073 (quoting *Hanson v. Denckla*, 357 U.S. 235 (1958)). The Eighth Circuit Court of Appeals has "instructed courts to consider the following factors when resolving a personal jurisdiction inquiry: '(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.'" *Id.* at 1073-74 (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)); *see also Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965) (creating five factor inquiry).

### *C. Application*

Because InVision does not argue that the court has specific jurisdiction over Studio 360, or that the injury giving rise to this action arose within or is otherwise connected with Iowa, the court need only determine whether general jurisdiction exists. "A court obtains general jurisdiction 'against a defendant who has continuous and systematic contacts with

the forum state, even if the injuries did not arise out of the defendant's activities directed at the forum.'" *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (internal marks omitted) (quoting *Dever*, 380 F.3d at 1073).

Courts considering whether a foreign corporation has continuous and systematic contacts with a forum state often consider whether the corporation has an office or agent in the forum state, does business in the state, has bank accounts or property in the state, advertises or solicits business in the state or designs a product for use in the state. *See Med-Tec, Inc., v. Kostich*, 980 F. Supp. 1315, 1329 (N.D. Iowa 1997); *see also VGM Fin. Servs. v. Singh*, 708 F. Supp. 2d 822, 835 (N.D. Iowa 2010). Of these traditional contacts, InVision argues only that Studio 360 "has advertised its ability to practice architecture in Iowa." Resistance at 7. To support this claim, InVision submitted a printout from the Buildings Trades Directory website that lists numerous architects under the State of Nebraska, including "Brown Architecture & Design Co." Resistance Exhibit 8 (docket no. 15-8) at 1. Next to the firm name is contact information and a list of eight states: "Nebraska, Iowa, Montana, Florida, South Dakota, Wyoming, Minnesota [and] Kansas." *Id*.

Studio 360 argues that it "does not and has not ever advertised in Iowa." Reply at 3. Studio 360 points out that it is listed on the Buildings Trades Directory as a Nebraska firm and is not similarly listed under Iowa. Studio 360 also maintains that the Buildings Trades Directory is not an Iowa advertisement and that the Directory itself notes that it is produced, in part, by gathering public information from company websites. Further, Dwayne Brown avers that Studio 360 did not submit information for publication in the Directory and that the information in the Directory, including the firm name and email address, is outdated. The court finds that the Buildings Trade Directory is insufficient to establish that Studio 360 advertises in Iowa, and InVision provides no other evidence to support this claim.

However, InVision does offer evidence that Studio 360, under the name "Brown Architecture and Design Co.," Resistance Exhibit 5 (docket no. 15-5) at 1, and its principal architect, Dwayne Brown, are licensed in Iowa. Specifically, InVision offers the results of two license searches that it conducted on the website, www.licensediniowa.gov. InVision maintains that the results demonstrate Dwayne Brown and Studio 360 are separately licensed in Iowa with independent license numbers.

Studio 360 admits that Dwayne Brown is a licensed architect in the State of Iowa. Dwayne Brown was originally licensed in Nebraska and obtained his Iowa license through reciprocity. *See* Affidavit of Dwayne Brown in Support of Reply ("Brown Affidavit") (docket no. 19-1) at ¶ 5. An architect who is licensed in a state with licensing requirements substantially similar to Iowa's may obtain a license in Iowa by completing an application for registration. *See* Iowa Admin. Code § 193B-2.2. In order to maintain Iowa licensure, an individual who is licensed in Iowa must renew his or her certificate of registration biennially. *See* Iowa Admin. Code § 193B-2.5. Because Dwayne Brown was originally licensed in 1998, he was required to renew his Iowa registration six times to maintain his license. *See id*.

Studio 360 denies that it is registered to do business in Iowa. Studio 360 argues that, because it is not listed as an Iowa corporation on the Iowa Secretary of State's website, it cannot be registered to do business in Iowa. Studio 360 further maintains that it is "***NOT*** licensed to do business in Iowa under that or any other name." Reply at 2. Despite this bold assertion, however, Studio 360 fails to explain why it is listed on an Iowa government website as being licensed in Iowa, with the license number 03909. Resistance Exhibit 5 at 1. Pursuant to Iowa Administrative Code section 193B-2.10, a foreign corporation must obtain an Authorization to Practice Architecture as a Business Entity ("Authorization") from the Architectural Examining Board before it can be licensed in Iowa. To obtain Authorization, the foreign corporation must complete an application that

can be found on the Iowa Professional Licensing Bureau's website at http://www.state.ia.us/government/com/prof/architect/home.html. Once the foreign corporation receives Authorization, the corporation does not need to renew the authorization. *See* Iowa Admin. Code § 193B-2.10(4). For purposes of the Motion, the court will assume, without deciding, that Studio 360 is licensed in Iowa as Brown Architecture & Design Co.

InVision also offers evidence that two of Studio 360's architects, Michael Carlson and Jeremy Carlson, have engaged in community activities in Iowa. Specifically, Michael Carlson sat on a panel of professionals that assisted the Iowa Chapter of the American Institute of Architects in selecting architectural firms to compete for the opportunity to design and build its new offices in Des Moines, Iowa. Additionally, Jeremy Carlson mentored high school students in a project involving the construction of a new building to serve as a "safe haven" for teenagers in Council Bluffs, Iowa. Resistance Exhibit 10 (docket no. 15-10) at 9. Studio 360 argues that neither of these activities were undertaken on behalf of Studio 360 and that Jeremy Carlson's activities took place "after the accrual of the present action, and, therefore, cannot form a basis for jurisdiction[.]" Reply at 5. InVision has produced no evidence that Michael Carlson and Jeremy Carlson undertook these activities on Studio 360's behalf. Furthermore, InVision cites no authority for its position that a corporation may be subject to personal jurisdiction in a state based upon two of its employees' participation in activities of this type.

In sum, InVision asks the court to find that Iowa courts have personal jurisdiction over Studio 360 because (1) both the corporation and its principal architect are licensed in Iowa and (2) two of the corporation's employees have participated in community activities in Iowa. These limited contacts with the State of Iowa do not constitute the type of continuous and systematic contacts necessary for this court to find Studio 360 subject to general personal jurisdiction in Iowa. *See EFCO Corp. v. Aluma Sys., USA, Inc.*, 983 F.

9

Supp. 816, 820 (S.D. Iowa 1997) (noting that, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test" when considering general jurisdiction); Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.5 (3d ed. 2002) (noting that, in order for a defendant to be subject to general jurisdiction in a state, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction").

Although Studio 360 is licensed in Iowa, there is no evidence in this record that Studio 360 has ever done business in Iowa. Furthermore, Studio 360 does not have an office, telephone number, bank account, or any employees, agents, representatives or customers in Iowa. *See VGM Fin.*, 708 F. Supp. 2d at 835 (finding defendant's contacts with Iowa insufficient to establish general jurisdiction where, among other factors, defendant did not have an office, telephone number, bank account or any employees, representatives, or agents in Iowa). Likewise, there is no evidence in the record that Studio 360 has ever advertised in Iowa. *See, e.g., Med-Tec, Inc.*, 980 F. Supp. at 1329 (listing advertising as a "traditional" contact with a state that courts should consider in a personal jurisdiction analysis).

Because InVision has failed to make a prima facie showing that Studio 360 has engaged in continuous and systematic business activities in Iowa, InVision has not met its burden to demonstrate that Iowa courts have general jurisdiction over Studio 360. *See Romak*, 384 F.3d at 983-84 (quoting *Epps*, 327 F.3d at 647); *see also Burlington Indus.*, 97 F.3d at 1103 (finding insufficient contacts to support general jurisdiction where the defendant sold products to retailers in the forum state, the defendant's officers traveled to the forum state to secure a business-related account and the defendant made over 100 business-related telephone calls to the forum state). Consequently, the court shall grant

the Motion.

## *VII. CONCLUSION*

In light of the foregoing, the Motion (docket no. 8) is **GRANTED** and Studio 360 is **DISMISSED** from the instant action.

**IT IS SO ORDERED.**

**DATED** this 11th day of April, 2011.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA